Yongmoon Kim
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
Tel. & Fax (201) 273-7117
Email: ykim@kimlf.com
*Attorneys for Plaintiff Alison George*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ALISON GEORGE, *individually and on behalf of those similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>MIDLAND FUNDING, LLC;<br>MIDLAND CREDIT MANAGEMENT, INC., and JOHN DOES 1 to 10,<br><br>Defendants. | Civil Action No.<br><br><br><br><br><br>**CLASS ACTION COMPLAINT** |

Plaintiff, Alison George, by way of Class Action Complaint against Defendants, Midland Funding, LLC, and Midland Credit Management, Inc. (and John Does 1 to 10), state:

### I.   NATURE OF THE ACTION

1. Plaintiff brings this action for damages against Defendants arising from Defendants' violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692–1692p.

2. As described more fully below, Defendants violated the FDCPA against Plaintiff and other New Jersey consumers by, *inter alia*, for sending collection letters with false threat of interest; false representation of savings and discounts on a time-barred debt; and false threat of credit reporting.

## II.   JURISDICTION AND VENUE

3. This Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

4. Venue in this action properly lies in the District of New Jersey as Defendants regularly do business in this district.

## III.   PARTIES

5. Plaintiff, Alison George ("George"), is a natural person residing in Bergen County, New Jersey.

6. Defendant, Midland Funding LLC ("MF"), is a Delaware limited liability company with its principal place of business at San Diego, California. MF is engaged in the purchase and collection of defaulted consumer debts.

7. Defendant, Midland Credit Management, Inc. ("MCM"), is a Kansas corporation with its principal place of business located at 3111 Camino Del Rio North, Suite 103, San Diego, CA 92108. MCM is engaged in the purchase and collection of defaulted consumer debts.

8. Defendants John Does 1 to 10 are fictitious names of individuals and businesses alleged for the purpose of substituting names of defendants whose identity will be disclosed in discovery and should be made parties to this action.

## IV.   FACTS

A. Background

9. Defendants are not in the business of extending credit, selling goods or services to consumers.

10. Defendants regularly collect or attempt to collect past-due or defaulted debts allegedly owed to others which were incurred primarily for personal, family or household purposes.

11. Defendants are in the business of collecting past-due or defaulted debts or alleged debts of natural persons.

12. Defendants use the mails, telephone, the internet and other instruments of interstate commerce in engaging in the business of collecting past-due or defaulted debts or alleged debts of natural persons which arise from transactions which are primarily for personal, family, or household purposes.

13. Defendants are engaged in the collection business.

14. Defendants are litigious debt-buyers which purchase past-due and defaulted consumer accounts for pennies on the dollar, and then attempts to collect those accounts itself or through other collection agencies or collection law firms.

15. In connection with Defendants' efforts to collect consumer debts, Defendants routinely hire other debt collectors or collection attorneys to send dunning letters to consumers in an effort to collect the consumer debts.

16. Defendants file hundreds of thousands of collection lawsuits in the State of New Jersey. In fact, according to the New Jersey Superior Court Automated Case Management System ("ACMS") and statistics derived from LexisNexis® searches, MF has filed over 300,000 debt collection complaints within the past decade.

17. All actions taken in the name of MF are in fact taken by MCM.

18. Defendants are under common ownership and management; both are part of Encore Capital Group, Inc.

19. MCM directs the collection activity complained of herein on behalf MF.

20. At all times relevant hereto, MCM acted on behalf of MF in an attempt to collect the debts and with respect to the collection activity complained of herein.

21. At all times relevant hereto, the acts and omissions of MCM were incidental to or taken within the scope of the responsibilities given and authorized by MF.

22. Defendants have asserted that George incurred or owed certain financial obligations arising from an account which debt arose from one or more transactions which were primarily for Plaintiff's personal, family, or household purposes ("Debt" or "Account").

23. The debts alleged to be owed by Plaintiff and those similarly situated were incurred for personal, family or household purposes.

24. Defendants contend that the Account was past-due and in default.

25. Sometime after default, the creditor of the Account either directly or through intermediate transactions assigned, placed, transferred or sold the Debt to Defendants for collection.

26. The Account was past-due and in default when it was placed with or assigned to Defendants for collection.

27. At all times relevant hereto, Defendants acted in attempts to collect the Debt.

28. In attempts to collect the Debt from George, Defendants mailed collection letters to George on November 8, 2017 ("11/8/17 Letter") and December 20, 2017 ("12/20/17 Letter"); a true copy of the collection letters, but with redactions, is attached as ***Exhibit A***.

B. **False Threat of Interest**

29. Defendants' collection letters state: "Current Balance $6,483.88."

30. It is Plaintiff's understanding and belief that, under the terms and conditions applicable to her use of the Account, interest, late charges, and other charges and fees (such as annual fees) could accrue.

31. The least sophisticated consumer would reasonably presume and understand that a credit card account such as a Citibank credit card account would, if not paid in full every month, accrues interest and may accrue late charges and other charges and fees. Thus, the least sophisticated consumer would believe the truth of (a) the statement in Defendants' collection letters that the stated balance was merely the "Current Balance" as of the date of the respective collection letter, and (b) the implication that the amount due could or would increase if not promptly paid.

32. In fact, however, the balance of the Account could not increase and, even if it could increase, Defendants never intended to add, would not add, and did not add any lawful interest, late charges, or other fees and charges to increase the balance stated in Defendants' collection letters.[1]

33. Although Defendants' qualification of the amount due as "Current Balance" was literally true, such qualification was not a fact necessary to accurately disclose the amount of the Debt. The collection letters would have accurately stated the amount of the debt by stating "The amount due is $ [the exact amount due]." or "The amount of the debt is $ [the exact amount due]." By qualifying the amount due was the "Current Balance" however, Defendants failed to

---

[1] Through counsel, Plaintiff acknowledges decisions from the Seventh Circuit and, later, the Second Circuit addressing the optional use of a four-sentenced safe-harbor formula which, when that language is accurate, allows a debt collector to lawfully state the amount of the debt when that amount is changing over time. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000); *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72 (2d Cir. 2016). Thus, the use of the formula will not provide a safe-harbor when it would be inaccurate to do so. *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362 (7th Cir. 2018).

accurately state the amount of the Debt, and falsely, deceptively, and misleadingly represented to the least sophisticated consumer that the amount owed to the creditor would or could increase over time—indeed, that the amount owed had already changed by the time the collection letter was received days later.

34. Defendants' collection letters effect of leading a consumer to conclude that the amount due is not static but, instead, could increase, materially affects the decision of the least sophisticated consumer whether to pay the debt because, with limited resources and the inability to pay all debts, such a consumer would rationally pay a debt with a balance that was increasing due to interest before paying an otherwise identical debt with a static balance.

C. **Time-barred Debt**

35. Upon information and belief, the Account became first delinquent, and therefore in default, in June 2010.

36. When Defendants sent the collection letters (November 8, 2017 and December 20, 2017), the six-year statute of limitations had run on the Account.

37. The 11/8/17 Letter makes settlement offers and "pre-approved" offers.

38. The 11/8/17 Letter states that "[y]ou are pre-approved for a 40% discount!"

39. The 11/8/17 Letter further states that "[y]ou have been **pre-approved** for a discount program designed to save you money."

40. The 11/8/17 Letter states to "[a]ct now to maximize your savings" and "[s]ave up to $2,593.55[.]"

41. The 11/8/17 Letter and the 12/20/17 advertises 40% off and 20% off.

42. The 11/8/17 Letter and 12/20/17 Letter offered three settlement offers and "savings."

43. Defendants regularly sends collection letters attempting to collection and/or offering to settle debts on which the statute of limitations has expired.

44. The 11/8/17 Letter and 12/20/17 Letter also state: "The law limits how long you can be sued on a debt and how long a debt can appear on your credit report. Due to the age of this debt, we will not sue you for it or report payment or non-payment of it to a credit bureau."

45. The 11/8/17 Letter and 12/20/17 Letter fail to disclose that choosing to accept any of Defendants' offers to make multiple payments could reset or restart the applicable statute of limitations or create a new enforceable settlement or contract.

46. The 11/8/17 Letter and 12/20/17 Letter fail to disclose that should the applicable statute of limitations reset or begin again, Defendants or a subsequent assignee may have the right commence legal action, which otherwise would have been barred.

47. Defendants fail to clearly inform Plaintiff, and the least sophisticated consumer, that the applicable statute of limitations has expired and therefore any potential legal liability related to the time-barred debt has also already expired.

48. The 11/8/17 Letter and 12/20/17 Letter advise that "we" (MCM) will not sue on the debt but does not advise whether MF or a subsequent assignee could or would sue on the debt.

49. The 11/8/17 Letter and 12/20/17 Letter advise that "we" (MCM) will not sue on the debt but does not advise whether Defendants or a subsequent assignee could or would sue on a defaulted monthly payment option.

50. Defendants regularly collect or attempt to collect debts which are time-barred.

51. Defendants regularly send collection letters seeking to collect time-barred debts that offer monthly payment plans.

52. Defendants regularly send collection letters seeking to collect time-barred debts that offer monthly payment plans but do not inform the consumer that the applicable statute of limitations could reset or begin again upon making the first monthly payment or by entering into a settlement agreement to repay.

53. Defendants regularly send letters seeking to collect time-barred debts that offer monthly payment plans but do not inform the consumer that the applicable statute of limitations could reset or begin again, which could allow the current or subsequent assignee the option of commencing legal action to enforce the new settlement agreement when the underlying debt would otherwise be barred by the applicable statute of limitations.

54. Defendants regularly send collection letters offering to settle debts on which the statute of limitations has expired.

55. The Federal Trade Commission has found that "[m]ost consumers do not know their legal rights with respect to collection of old debts past the statute of limitations . . . . When a collector tells a consumer that she owes money and demands payment, it may create the misleading impression that the collector can sue the consumer in court to collect that debt." The FTC entered into a consent decree with Asset Acceptance, LLC, one of the largest debt buyers in the United States, requiring that it disclose to consumers when it is attempting to collect debts that are barred by the statute of limitations.[2]

56. On October 1, 2012, the Consumer Financial Protection Bureau, which has taken over much of the FTC's enforcement responsibility and has been granted rule-making authority

---

[2] Press Release, Federal Trade Commission, Under FTC Settlement, Debt Buyer Agrees to Pay $2.5 Million for Alleged Consumer Deception (Jan. 30, 2012), http://www.ftc.gov/news-events/press-releases/2012/01/under-ftc-settlement-debt-buyer-agrees-pay-25-million-alleged (For the Consent Decree wherein Asset Acceptance promises to stop filing time-barred suits, see http://www.ftc.gov/enforcement/cases-proceedings/052-3133/asset-acceptance-llc).

with respect to debt collection, the Federal Deposit Insurance Corporation, the Federal Reserve Board, and the Office of the Comptroller of the Currency entered into consent orders with three American Express-related entities requiring disclosure that debts they attempt to collect were time-barred. 2012-CFPB-0002; 2012-CFPB-0003; 2012-CFPB-0004. The orders require that "the Bank shall continue to provide disclosures concerning the expiration of the Bank's litigation rights when collecting debt that is barred by the applicable state statutes of limitations . . ." (2012-CFPB-0002, p. 6 of 35, 2012-CFPB-0003, p. 5 of 28).

57.     The October 1, 2012 orders further require disclosure of "all material conditions, benefits and restrictions concerning any offer of settlement. . . ." (2012-CFPB-0002, p. 7 of 35, 2012-CFPB-0003, p. 6 of 28). Thus, they recognize that collection letters that fail to disclose material information may be misleading.

58.     On January 30, 2013, the FTC issued its report, The Structure and Practices of the Debt Buying Industry, available at http://www.ftc.gov/os/2013/01/debtbuyingreport.pdf. The report reaffirms its position in the United States of America v. Asset Acceptance, LLC, No. 8:12-cv-182-T-27EAJ (M.D. Fla. 2012), American Express Centurion Bank (FDIC-12-315b, FDIC-12-316k, 2012-CFPB-0002), American Express Bank, FSB (2012-CFPB-0003) and American Express Travel Company, Inc. (2012-CFPB-0004) cases, that a defendant may violate the FDCPA by sending a collection letter demanding payment of a time barred debt without disclosing that the debt was time barred.

59.     The report cites to a study (Timothy E. Goldsmith & Natalie Martin, Testing Materiality Under the Unfair Practices Acts: What Information Matters When Collecting Time-Barred Debts?, 64 Consumer Fin. L.Q. Rep. 372 (2010)) that establishes the disclosure that a debt is time barred in a debt collection letter is material to the consumer.

60. "[A]n unsophisticated consumer could be misled by a dunning letter for a time-barred debt, especially a letter that uses the term 'settle' or 'settlement.'"[3]

61. Nothing in the collection letters disclosed the date of default.

62. Nothing in the collection letters disclosed that the Debt is legally unenforceable in a court of law.

63. Nothing in the collection letters state that the Debt is barred by the statute of limitations.

64. Plaintiff believed, as would the least sophisticated consumer would understand, that MF, or a subsequent assignee, would later sue to collection on the debt.

65. Nothing in the collection letters disclosed the legal consequences of a settlement or a payment.

66. Nothing in collection letters disclosed that a settlement would restart the statute of limitations.

---

[3] *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1022 (7th Cir. 2014); *see also Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 429 (3d Cir. 2018) ("in the specific context of a debt-collection letter, the least-sophisticated debtor could be misled into thinking that 'settlement of the debt' referred to the creditor's ability to enforce the debt in court rather than a mere invitation to settle the account."); *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 513 (5th Cir. 2016) ("a collection letter seeking payment on a time-barred debt (without disclosing its unenforceability) but offering a 'settlement' and inviting partial payment (without disclosing the possible pitfalls) could constitute a violation of the FDCPA."); *Buchanan v. Northland Group*, 776 F.3d 393, 399 (6th Cir. 2015) ("a 'settlement offer' with respect to a time-barred debt may falsely imply that payment could be compelled through litigation."); *Filgueiras v. Portfolio Recovery Assocs., LLC*, No. 15-8144 (JLL) (SCM), 2016 U.S. Dist. LEXIS 54672, at *23 (D.N.J. Apr. 25, 2016) ("When a debt collector offers to 'settle' a time-barred debt, it is plausible that the legal status of the debt has been misrepresented since it is plausible that an unsophisticated consumer would believe a letter that offers to 'settle' a debt implies that the debt is legally enforceable." (internal quotations marks and citations omitted)).

67. In fact, Defendants' representations of "discounts" and "savings" are false as the debt is unenforceable in a court of law. Such savings do not exist as Plaintiff would have a complete statute of limitations defense to the Debt.

68. Contrary to Defendants misrepresentations, Plaintiff would never receive "40% OFF," "20% OFF" or "[s]ave up to $2,593.55" because this Debt is legally unenforceable in court.

69. Lastly, nothing in the collection letters advised that Defendants is barred by law from report the Account to a credit reporting agency.

70. Nothing in the collection letters advised that MF will not report the Account to the credit reporting agency.

71. On information and belief, the collection letters attached as Exhibit A are mass-produced, computer-generated form letters—that is, it was created by merging electronically-stored information about the debts with an electronically-stored template—that is mailed to consumers in the State of New Jersey, such as Plaintiff, from whom Defendants were attempting to collect a debt.

## V.    CLASS ACTION ALLEGATIONS

72. It is Defendants' policy and practice to mail written collection communications, in the form exemplified in Exhibit A, in an attempt to collect consumer debts.

73. Plaintiff brings this action individually and as a class action on behalf of all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

74. Subject to discovery and further investigation which may cause Plaintiff to modify, narrow or expand the following class definitions at the time Plaintiff moves for class certification, Plaintiff seeks certification of Classes initially defined as follows:

> **Class A: All natural persons to whom a letter from Midland Credit Management, Inc., was mailed to a New Jersey address on**

> or after November 7, 2017, in an attempt to collect a Citibank debt to which stated the amount of the debt to be the "Current Balance."
>
> **Class B**: All natural persons to whom a letter, in the form as Exhibit A, from Midland Credit Management, Inc., was mailed to a New Jersey address on or after November 7, 2017, in an attempt to collect a Citibank debt on which the applicable statute of limitations has expired.

75. Plaintiff seeks to recover statutory damages, attorney's fees and costs on behalf of all Class members under the Fair Debt Collection Practices Act.

76. The Class A Claims are those claims arising under the Fair Debt Collection Practices Act arising from a letter mailed in an attempt to collect a debt once owed or allegedly owed to Citibank which stated the amount of the debt to be the "Current Balance."

77. The Class B Claims are those claims arising under the Fair Debt Collection Practices Act arising from a letter, in the form as Exhibit A, mailed in an attempt to collect a debt once owed or allegedly owed to Citibank on which the statute of limitations has expired.

78. The Classes are so numerous that joinder of all members is impracticable and, on information and belief, exceeds forty members.

79. There are questions of law and fact common to the members of the Classes that predominate over questions affecting only individuals.

80. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. The FDCPA statutory scheme provides for statutory damages payable to each class member. A class action will cause an orderly and expeditious administration of the claims of the classes and will foster economies of time, effort and expense.

81. Plaintiff's claims are typical of the claims of the members of the Classes.

82. The questions of law and/or fact common to the members of the classes predominate over any questions affecting only individual members.

83. Plaintiff does not have interests antagonistic to those of the classes.

84. The Classes, of which Plaintiff is a member, is readily identifiable.

85. Plaintiff will fairly and adequately protect the interests of the Classes and has retained competent counsel experienced in the prosecution of consumer litigation. Proposed Class Counsel have investigated and identified potential claims in the action; have a great deal of experience in handling class actions, consumer and other complex litigation, and claims of the type asserted in this action.

86. The prosecution of separate actions by individual members of the Classes would run the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the Defendants in this action or the prosecution of separate actions by individual members of the classes would create the risk that adjudications with respect to individual members of the classes would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. Prosecution as a class action will eliminate the possibility of repetitious litigation.

87. Plaintiff does not anticipate any difficulty in the management of this litigation.

## VI. FIRST COUNT: VIOLATIONS OF THE FDCPA

88. The allegations contained in the preceding paragraphs are incorporated herein and are reasserted as if repeated at length.

89. Defendants are a "debt collector" as defined by 15 U.S.C. § 1692a(6).

90. The Debt is a "debt" as defined by 15 U.S.C. § 1692a(5).

91. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

92. The collection letters attached as Exhibit A are "communications" as defined by 15 U.S.C. § 1692a(2).

93. Defendants' mailing of the collection letters to Plaintiff in attempts to collect the Debt violated the Fair Debt Collection Practices Act (including, but not limited to, 15 U.S.C. §§ 1692e (including subsections 1692e(2)(A), 1692e(2)(B), 1692e(5), 1692e(8), 1692e(9), and 1692e(10)), 1692f (including subsection 1692f(1)), and 1692g (including subsection 1692g(a)(1)).

94. Based on any one or more of those violations, Defendants are liable to Plaintiff and to the Classes for an amount of money as allowed under 15 U.S.C. § 1692k including, but not limited to, damages, costs, and reasonable attorneys' fees.

## VII.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Alison George demands judgment against Defendants, Midland Funding, LLC, and Midland Credit Management, Inc., as follows:

A. For certification of this instant matter as a class action, appointing the named Plaintiff as representative of the Classes, and appointing the attorneys of Kim Law Firm LLC as class counsel;

B. An award of actual damages for Plaintiff and the Classes pursuant to 15 U.S.C. § 1692k(a)(1) to the extent the recovery of attorney's fees and costs causes Plaintiff or the Classes a negative tax consequence;

C. For statutory damages in favor of Plaintiff and the Classes pursuant to 15 U.S.C. § 1692k(a)(2);

D. For attorney's fees, litigation expenses and costs in connection with this action pursuant to 15 U.S.C. § 1692k(a)(3);

E. For pre-judgment and post-judgment interest; and

F. For such other and further relief as the Court deems equitable and just.

## VIII. JURY DEMAND

Plaintiff demands trial by jury as to all issues so triable.

## IX. CERTIFICATION

Pursuant to Local Civil Rule 11.2, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding except *Stromberg v. Midland Funding, LLC*, 2:16-cv-09288-ES-SCM (D.N.J.).

                                                      KIM LAW FIRM LLC

                                                     *s/ Yongmoon Kim*
                                                     Yongmoon Kim
                                                     *Attorneys for Plaintiff*

Dated: November 7, 2018